**SO ORDERED.**

**SIGNED April 06, 2009.**



_____
**HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE:<br>    WILLIAM P. POLK<br>    COURTNEY S. POLK<br>        (Debtors) | CASE NO: 08-80025 |
| RECREATIONAL LAND INVESTMENTS, L.L.C.<br>        (Plaintiff) | ADVERSARY NO. 08-8005 |
| VERSUS | |
| WILLIAM P. POLK<br>        (Defendant) | |

**REASONS FOR DECISION ON MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on a Motion for Summary Judgment by the debtor, Defendant. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (K). This Court has jurisdiction pursuant to 28 U.S.C. §1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 83.4.1 incorporated into Local Bankruptcy Rule 9029.3. No party has sought to withdraw the reference, nor has the District Court done so on its own motion. This Court makes the following Findings of Fact and Conclusions of Law in accordance with

F.R.B.P. 7052. Pursuant to these reasons, the motion is GRANTED.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The debtor and his wife filed a Chapter 13 Petition on January 7, 2008, which converted to a case under Chapter 7 on April 17, 2008. Prior to the filing, Mr. Polk was an agent for the plaintiff, which sells real estate. Mr. Polk is also an attorney at law. The complaint herein alleges grounds for relief under §§523(a)(2)(A), (a)(4) and (a)(6). On January 6, 2009, plaintiff amended the complaint, alleging that, although debtor's bankruptcy schedules reflect he was still associated with the plaintiff, debtor had in fact associated himself with another company to sell real estate in the same line of business and in the same parishes covered by a non-competition clause in his "Independent Contractor Agreement" with the plaintiff, which proscribed such actions for a period of two years. Plaintiff further alleges that debtor sold properties and received commissions post-petition in an unknown amount, in violation of the agreement. Plaintiff claims a balance due on a promissory note for advances against commissions in the amount of $17,000.00 and alleges that the debtor was advanced another $861.12 post-petition. (Doc. #45.) However, at the hearing on the Motion for Summary Judgment, the plaintiff conceded the defendant's motion as to the grounds asserted under §§523(a)(4) and (a)(6), so the Court will limit the discussion herein to the remaining allegations solely under §523(a)(2). It thus appears that the plaintiff has also abandoned the complaint for injunctive relief.

**Applicable Law and Analysis**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, provides in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

2

together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." "Although summary judgment is a useful device, it must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

In ruling on a motion for summary judgment, the evidence should be considered in the light most favorable to the non-movant. *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983). However, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

Section 523(a)(2)(A) provides in pertinent part that the discharge does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing or credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; (B) use of a statement in writing— (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." Under the amended complaint, plaintiff appears to rely solely on §523(a)(2)(A).

To recover, the plaintiff must establish by a preponderance of the evidence that the debtor made a representation, that the debtor knew the representation was false, that the representation was made with the intent to deceive the creditor, that the creditor actually and justifiably relied on the representation, and that the creditor suffered loss as a proximate cause of the reliance. For a debt to meet the third prong of the test, the "scienter requirement," the representation mut be knowingly and fraudulently made, and such debts involve "moral turpitude or intentional wrong." The intent

3

may be inferred from "reckless disregard for the truth or falsity of the statement combined with the sheer magnitude of the resulting misrepresentation." *In re Acosta*, 406 F.3d 367 (5th Cir. 4/8/2005).

In *Acosta*, the plaintiff challenged the discharge of the debtor on the theory that he failed to report the correct status and existence of liens on two vessels and that the captain of one vessel had a personal injury claim. The plaintiff particularly relied on the debtor's silence as to the disputed facts. The bankruptcy court ruled that the debt was dischargeable. Both the district court and the Fifth Circuit affirmed.

Summary of the Evidence

Mr. Polk and Mossy Oak entered into a contract memorialized as an "Independent Contractor Agreement," dated November 1, 2005, employing Polk as a Salesperson. (Exhibit A, Complaint filed

April 4, 2008, Doc. #1.) The compensation was fixed in accordance with a schedule attached to the contract. The agreement provided for termination by either party by written notice. Following termination, the salesperson agreed not to carry on or engage in a similar business directly or independently for a period of two years in a number of Parishes in Louisiana.[1]

Mr. Polk continued to act as a salesperson for Mossy Oak through 2007 and into 2008. He,

---

[1]There is no compensation schedule attached to the exhibit. Even though plaintiff has apparently abandoned the complaint for injunctive relief for violation of the agreement, it should be noted that Louisiana has a strong public policy against such contracts. La.R.S. 23:921. It appears that debtor may have received somewhere in excess of $4,000.00 from his affiliation with the plaintiff's competitor in 2008, the recovery of those sums as damages is not treated in plaintiff's oppositions to the motion for summary judgment, except for a payment of $861.12 to the debtor after he filed bankruptcy. (Polk Deposition, p.9.) While plaintiff alleges it would not have paid debtor that sum if they knew he had filed bankruptcy, despite his demand for it, it is hard to connect that payment to any alleged and unproven misrepresentation, except insofar as the amount does not readily square with the income reported by Polk in his bankruptcy petition and schedules. Plaintiff has not brought this action under 11 U.S.C. §727. There is also some indication that debtor's counsel advised the plaintiff that Polk had filed a Chapter 13 petition.

4

in fact, obtained a real estate license with their broker. He moved his license from Mossy Oak to Kyle Hubbard, as of January 3, 2008. (Exhibit 2, Deposition of William P. Polk.)

On November 15, 2007, Christopher G. Campbell, with Mossy Oak, wrote Mr. Polk concerning the relationship between the parties, particularly the indebtedness by Mr. Polk to the company in the amount of $27,526.55. This amount represented the balances due on two promissory notes executed by Mr. Polk dated June 15, 2007, and September 5, 2007, for advances to him on two real estate contracts. This letter requested that Mr. Polk propose a plan for the repayment of these advances. The letter also requested that Mr. Polk advise the company as to his plans for setting up an office, since Polk was moving from an office he previously occupied in Dunbar Plaza. (Exhibit J.J. Keeth "3.") On January 14, 2008, J.J. Keeth, another representative of Mossy Oak, wrote Mr. Polk, suggesting that he affiliate himself with a residential real estate firm in Alexandria, and requesting that he notify any Mossy Oak clients that he was no longer affiliated with same. The letter requested that Polk make definite arrangements regarding to the outstanding indebtedness. [2]

The thrust of the plaintiff's allegations is a sales contracts and receipt for part payment dated August, 2007, between Vista Investments of Louisiana, LLC, as purchaser, and Tulip Farms, Inc., and U.S. Investments Realty Co., as sellers. Exhibit 5, Deposition of William P. Polk. This is one of a series of sales or proposed sale contracts negotiated by Polk in 2007. A $50,000.00 deposit was posted by the purchaser in connection with this contract, with an agreed sales price of $4,775,000.00 to be paid at closing. However, the sale did not close, and the deposit was refunded.[3] The contract

---

[2]This letter was sent following the filing of the bankruptcy petition.

[3]Other contracts included a Real Estate Purchase Contract between Farmland Managment services, as buyer, and U.S Investment Realty Company, as seller, but that contract was not

5

clearly provided that the deposit was just that, and that it was not "earnest money," which would have been forfeited had the purchaser defaulted. Plaintiff maintains that debtor's representations that there was "hard money" on deposit constitutes a misrepresentation. Plaintiff's counsel further argues that the debtor could have changed the contract to provide that the deposit was earnest money.

The plaintiff asserts that the advances to Mr. Polk, represented by his promissory notes, were based on Polk's assurances that there were deals in the making secured by "hard money." This, the plaintiff equates (or effectively seeks to confuse with) funds on deposit which were not subject to refund in the event the seller(s) reneged on the deal, based on verbal assurances Mr. Polk allegedly made. Mr. Polk, as an attorney, clearly understood the difference between a deposit on the purchase price and "earnest money," which he described succinctly as follows, in the following colloquy with plaintiff's counsel:

"Q. All right. Mr. Polk, you are an attorney, aren't you?

A. Yes.

Q. And you know the difference between earnest money and deposit money?

A. Yes.

Q. And earnest money is considered hard money, in other words, if the deal doesn't

---

executed. It contained a provision that could be executed by the escrow agent for Earnest Money, although the portion of the contract regarding the deposit provided that the deposit would be applied to the purchase price. ¶(3)(A). ¶14 provided that, in the event of default by the purchaser, the seller would have the option of retaining the deposit as liquidated damages, or suing for specific performance. This contract is unsigned. (Exhibit 4, to Deposition of William Polk; Sales Contract and Receipt for Part Payment, between Trinity Christian Church, as purchaser, and Jimmy Carter and Francis Taylor, as sellers, dated May, 2005.) This contract, like the contract at issue, is on a form styled "Mossy Oak Properties of Louisiana," Exhibit 5, Deposition of William Polk. The unsigned contract is not on a "Mossy Oak" form.

go through that money is forfeited?

A. Right.

Q. And deposit money is simply money that is put against the purchase price if the purchaser wants to go through. Gets a free look I think is the term that your attorney was looking for.

A. Well, a deposit sometimes, you know, is applied toward the purchase price. Sometimes it may give them a free look. Sometimes it may be put in escrow. You know, it just depends on each individual circumstance.

Q. Okay. Do you recall telling J. J. Keeth or telling Chris Campbell before and in connection with making the advances, your discussions about making these loans, that you had hard money up?

A. No, I wouldn't have. The money had not gone hard, so I would not have told them that.

It was clear in the contract which they had in the office."

(Deposition of William Polk, pgs. 21-22.)

Although plaintiff makes much of when and if a copy of the contract at issue was or was not faxed to its offices, or was seen by the representatives of Mossy Oak, namely Mr. J.J. Keeth or Mr. Christopher G. Campbell, the following testimony by the former is telling:

Q. I'm sorry, Vista Investments, Exhbit 6 in Mr. Polk's Deposition. Would you look at Exhibit 6 and tell me if you recognize that document?

A. I do recognize the form of the document. The document itself I do not.

Q. Okay. Well, could you tell us–

7

A. I feel pretty certain I did read this contract, because it is on our normal Mossy Oak Properties of Louisiana contract.

Q. Okay.

A. Sales Contract.

Q. And in general you just said it, I believe this was a general sales contract that somebody who had listed Mossy Oak as a real estate agent would sign if they were interested in either buying or selling a piece of property listed by Mossy Oak. Is that fair to say?

A. Yes.

(Deposition of James S. Keeth, Jr., pgs. 23-24.)

The witness further identified the contract as a "standard sales contract and receipt for part payment drawn up by our corporate attorney, Scott Sinclair, and acknowledged that one of the contracts (Exhibit 5) expressly stated that the deposit was not to be considered as earnest money, as opposed to the sales agreement, not on Mossy Oak's form, that did contain earnest money provisions (Exhibit 4). (Keeth Deposition, pgs. 26&27.)

There is no genuine issue of material fact as to whether Polk represented that there was "hard money" posted for the sale in question. In fact, as is clearly shown by the testimony of the plaintiff's representative Mr. Keeth, the form used was prepared by plaintiff's own attorney does not contain any provision for "earnest money," not even as an alternative. Plaintiff's argument that the debtor could have changed the contract is little more than wishful thinking. Polk clearly understood the difference between earnest money and a deposit against the purchase price. Moreover, the claims that Polk misrepresented that

8

the deposit was "hard money," or that he could have changed the contract, is inconsistent with the terms of the Independent Contractor agreement itself. It provides that "no oral or written agreement, understanding, statement, representation or comment not expressly contained herein shall be binding or valid against either party, nor shall have any effect on the rights or obligations of the parties hereunder, except as expressly stated herein." The contract also provides that Mossy Oak had no authority to direct or control the salesperson's actions except as specifically required by law," and that the latter retains the "sole and absolute discretion and judgment in the manner and means of carrying out [his] activities on behalf of the company."  Contract, ¶¶ 3.2, 6.2, and 8.3.

At the end of the day, the plaintiff admits that the form on which it claims the defendant misrepresented the stability of the deposit made by the potential purchaser, i.e. whether the deposit money was "hard" money or not, was in fact, the plaintiff's form. Therefore, the Court finds that the plaintiff has failed to establish a genuine issue of material fact as any misrepresentations by the debtor.  The plaintiff admits its allegations rest on §523(a)(2)(A) alone, and the complaint can only survive the Motion for Summary Judgment if there is a genuine issue of material fact as to whether Mr. Polk obtained the advances from the plaintiff by false pretenses, representation or actual fraud that was *other than* a statement respecting his own financial condition.  Plaintiff states in its opposition to the Motion for Summary Judgment, that had it known of the defendant's impending personal bankruptcy, it would not have extended the advances.  Clearly, that argument cannot fit within the "other than a statement respecting his own financial condition."

**CONCLUSION**

9

The Motion for Summary Judgment is **GRANTED.** A separate and conforming order will enter.

# # #